UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES BANNECK,<br><br>               Plaintiff,<br><br>      v.<br><br>HSBC BANK USA, N.A., et al.,<br><br>           Defendants. | Case No.  15-cv-02250-HSG<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 46 & 58 |

Before the Court is the motion for partial summary judgment or, in the alternative, for summary adjudication filed by Defendant Experian Information Solutions, Inc. ("Experian").  Dkt. No. 46 ("Mot.").  Experian contends that discovery has produced no evidence to support Plaintiff James Banneck's ("Banneck") claim that Experian inaccurately reported credit information about him or that willfully reported any inaccuracies.  Banneck has filed an opposition, Dkt. No. 51 ("Opp."), and Experian has filed a reply, Dkt. No. 55 ("Reply").

For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Experian's motion for partial summary judgment.  Summary judgment is proper as to all claims alleging that Experian inaccurately reported Banneck's short sale as a foreclosure, as well as to the issue of willfulness.  Summary judgment is not proper, however, as to all claims alleging that Experian inaccurately reported the date of the short sale.

## I.      BACKGROUND

### A.      Factual Allegations

This is an action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), and the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1, *et seq.*

United States District Court<br>Northern District of California

("CCRAA"), both of which proscribe certain credit reporting conduct.  Dkt. No. 1 ("Compl.") ¶ 1.

Banneck took out a mortgage with Defendant HSBC Bank USA, N.A. ("HSBC").  *Id.* ¶ 7. He completed a "short sale" after which nothing further was owed on the loan.  *Id.* ¶¶ 8-9. Banneck alleges that HSBC, however, erroneously reported the short sale as a foreclosure to Experian.  *Id.* ¶ 10.  Experian then produced consumer credit reports that contained the false information about a foreclosure.  *Id.* ¶ 13.  Banneck disputed the credit report with HSBC and Experian in writing, *id.* ¶ 11, but he alleges that they failed to conduct reasonable investigations into the dispute, *id.* ¶ 12.

Afterwards, and separately, HSBC and Experian began to incorrectly report that: (1) Banneck's short sale would continue on his credit record until November 2014; (2) Banneck had 120-day late payments on the account; and (3) the debt was transferred to another lender.  *Id.* ¶ 15.

As a result of HSBC and Experian's credit reporting, Banneck's creditworthiness was damaged.  *Id.* ¶ 16.  This conduct and damage also caused Banneck emotional distress.  *Id.* ¶ 17.

**B.    Procedural History**

Based on these factual allegations, Banneck asserts that Experian failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of his credit report and credit files that it published and maintains, in violation of 15 U.S.C. § 1681e(b) and California Civil Code § 1785.14(b).  *Id.* ¶¶ 19, 27(a).  Banneck also asserts that Experian failed to delete inaccurate information in his credit file after receiving actual notice of those inaccuracies, to conduct a lawful reinvestigation, to forward all relevant information to HSBC, and to maintain reasonable procedures by which to filter and verify disputed information in his credit file, all in violation of 15 U.S.C. § 1681i and California Civil Code § 1785.16.  *Id.* ¶¶ 20, 27(b).

Banneck alleges that Experian's actions were negligent, if not willful and knowing.  *Id.* ¶¶ 28, 30.  To the extent that this conduct was only negligent, he seeks actual damages and attorneys' fees and costs under 15 U.S.C § 1681o and California Civil Code § 1785.31(a)(1).  *Id.* ¶¶ 24, 30. To the extent that the conduct was willful within the meaning of the FCRA and CCRAA, he seeks punitive damages under 15 U.S.C. § 1681n and California Civil Code § 1785.31(a)(2).  *Id.*

Experian and HSBC answered the complaint.  Dkt. Nos. 10 & 22.  Experian now moves

*United States District Court*
*Northern District of California*

for partial summary judgment or, alternatively, summary adjudication.  Experian contends there is no evidence showing that Experian inaccurately reported Banneck's short sale.  Mot. at 13-16. Specifically, Experian points to evidence that, while a reporting error occurred, the error did not occur in Experian's credit reporting, but in non-party Fannie Mae's subsequent underwriting.  *Id.* at 7-9.  In any case, Experian contends that even if it violated the FCRA and the CCRAA, there is no evidence that those violations were willful within the meaning of the statutes.

Banneck argues that even if Experian did not inaccurately report Banneck's short sale as a foreclosure, it was Experian's misleading use of shorthand to identify the short sale that caused Fannie Mae's error.  *Id.* at 5-8.  Furthermore, Banneck posits that it is undisputed that Experian misreported the date of the short sale, which separately constitutes an actionable claim.  *Id.* at 5-6. Finally, Banneck contends that willfulness is a question for the jury.  *Id.* at 8-9.[1]

## II.    REQUEST FOR JUDICIAL NOTICE

Before turning to the merits of the motion, the Court addresses Experian's request for judicial notice of various orders and filings in other FCRA cases.  Dkt. No. 46-2 ("RJN").  Generally, a court may take judicial notice of documents "not subject to reasonable dispute."  Fed. R. Evid. 201(b).  Proceedings, including orders and filings, in other courts, including state courts, are the proper subject of judicial notice only when directly related to the case.  *Tigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (internal citations omitted).

The Court denies Experian's request.  The materials for which it seeks judicial notice are not directly related to this case, but merely discuss similar factual and legal claims.  *See id.*  To the extent that Experian seeks to admit findings contained these materials for the truth of the matters they assert, judicial notice is not appropriate.  *See Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1117 n.14 (9th Cir. 2005) (declining judicial notice of findings made in a state court proceeding "because [defendants were] offering the factual findings contained in the order for the purpose of proving the truth of the factual findings contained therein"); *Wyatt v. Terhune*, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003) ("Factual findings in one case ordinarily are not admissible for their truth

---

[1] After the hearing on Experian's motion for partial summary judgment, Experian filed a motion for leave to lodge supplemental authority.  Dkt. No. 58.  Banneck opposes it.  Dkt. No. 61.

United States District Court
Northern District of California

in another case through judicial notice.").  To the extent Experian seeks to cite materials that support its arguments, judicial notice is unnecessary: the Court can, and will, consider the reasoning of those materials for whatever persuasive value they may have.

### III.     LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  The district court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party, *id.*  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.*

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Where the moving party will bear the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for herself.  *Id.* at 325.  But on an issue for which the nonmoving party will bear the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*  If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Id.*  To show a genuine dispute in response, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Where there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, district courts may enter partial summary judgment.  Fed. R. Civ. P. 56(a).

///

4

United States District Court
Northern District of California

IV.  **DISCUSSION**

Before resolving the merits of Experian's motion for partial summary judgment, the Court discusses the evidence presented.  The facts set forth below are undisputed unless otherwise noted.

A.  **2010 Short Sale Agreement Between Banneck and HSBC**

A short sale is a real estate transaction in which a lender agrees to settle with a borrower to accept less than the full balance remaining on a loan and then sell the property and release its lien.  Hughes Decl. ¶ 3.  Short sales are sometimes also referred to as preforeclosure sales or mortgage settlements.  *Id.*  In February 2010, Banneck sold his personal residence in a short sale that settled two mortgages on the property, including one held by HSBC.  Dkt. No. 51-1 ("Banneck Decl.") ¶ 3; Clark Decl., Ex. 1 (letter from HSBC dated January 23, 2010, confirming short sale).

B.  **Experian's Credit Reporting of Short Sales and Foreclosures**

Experian is a consumer reporting agency, to which banks, credit card companies, and other lenders report credit information about borrowers.  Hughes Decl. ¶ 2.  Experian compiles this information to create a credit report using proprietary codes and displays; the report is transmitted to third party end-users who use Experian's published technical manual to translate it.  *Id.* ¶¶ 2, 7.

To denote short sales, Experian outputs certain information into its credit report.  First, it states the "account type," which may be, for example, a mortgage or home equity line of credit for which the sale occurred.  Hughes Decl. ¶ 4 & Exs. 1 & 2.  Second, Experian includes an "account condition and payment status" field that states the numerical code "68," which denotes that the account is "Settled" and means "Account legally paid in full for less than the full balance."  *Id.* ¶¶ 4-5 & Exs. 1 & 2.  Without dispute, in the lending industry, an account denoted as both settled and legally paid in full for less than the full balance means a short sale.  *See id.* ¶ 5; Clark Decl., Exs. 2 & 12 (lending industry association manual explaining that the phrase "Account paid in full for less than the full balance" refers to a short sale); *id.*, Ex. 3 ("Tarter Depo.") at 86:24-87:6 (Banneck's expert agrees that the phrase "settle the account for less than the full amount" refers to a short sale in the mortgage lending context).  And, third, Experian includes a "payment history grid," a string of 25 single-digit numerical codes.  The first is the numerical code "9," which is a "derogatory grid character" that refers to a settled account, like a short sale, a "collection," or a "charge-off."

The 24 binary codes that follow correspond to the last 24 months of monthly payment history information on the account, for which "0" means current and "1" means at least 30 days past-due. Hughes Decl. ¶¶ 4-5 & Ex. 1 & 2; Hughes Depo. at 49:3-7; Tarter Depo. 80:9-81:19 (Banneck's expert agrees that Experian's numerical code "9" can refer to short sales).

Experian outputs different information into a credit report to denote foreclosures. In the account condition and payment status field, it outputs the numerical code "94." Hughes Decl. ¶ 6 & Exs. 1 & 2. In the leading digit of the string of numbers that populate the payment history grid, Experian outputs the numerical code "8." *Id.*; Tarter Depo. 81:7-19. Experian also includes a special comment about the existence of a foreclosure. Hughes Decl. ¶ 6 & Exs. 1 & 2.

### C.    2012 Complaint from Banneck to Experian About Credit Reporting

On August 24, 2012, Banneck sent a complaint to Experian about the way that the short sale on his second mortgage with HSBC was being reported. Banneck Decl. ¶¶ 4-5; Dkt. No. 51-7 ("Golden Decl."), Ex. B ("Hughes Depo.") at 90:2-5. Banneck does not attach or explain the nature of this dispute in his operative pleading or his summary judgment opposition papers.

### D.    2013 Mortgage Application from Banneck to Red Rock Mortgage

In or around April 2013, Banneck applied for a mortgage loan from Red Rock Mortgage to purchase an investment property in Las Vegas. Banneck Decl. ¶¶ 6-7. As part of that application, Red Rock Mortgage obtained Banneck's credit report through CBC Innovis, which is a company that merges credit information from the major consumer reporting agencies, including Experian. Banneck Decl. ¶ 8 & Ex. B; Clark Decl., Ex. 7. Experian provided credit information regarding Banneck to CBC Innovis. Banneck Decl., Ex. B; Hughes Depo. at 39:24-40:8. Experian reported a code "9" in its payment history grid for Banneck's second mortgage with HSBC that was discharged in the short sale. Banneck Decl., Ex. B. This code reporting was in accordance with Experian's coding rules. Tarter Depo. 80:9-81:19 (Banneck's expert agrees that Experian correctly reported a short sale and not a foreclosure under its own rules); Banneck Depo. 47:23-48:18. It is also undisputed that Experian reported that Banneck's mortgage loan was closed in August 2012, when in fact it occurred in February 2010. *See* Banneck Decl. ¶¶ 9-10 & Ex. C.

Red Rock Mortgage also ran Banneck's mortgage application through software known as

1    Desktop Underwriter ("DU"), which is Fannie Mae's automated underwriting system that it

2    licenses to lenders like Red Rock Mortgage.  Clark Decl., Ex. 6 (DU findings); Tarter Depo. 37:3-

3    18, 40:22-41:3.  When Red Rock Mortgage ran Banneck's application through DU, the software

4    issued a "Refer with Caution" recommendation, which relied on Experian's credit reporting vis-à-

5    vis CBC Innovis.  Clark Decl., Ex. 6.  The findings from DU also stated that, "credit report has

6    identified an account that may have been subject to a preforeclosure sale.  The preforeclosure sale

7    must have been completed two or more years from the credit report date[.]"  *Id.*

8           Ultimately, Red Rock Mortgage did not offer Banneck his requested mortgage loan.  *Id.*,

9    Ex. 9.  The denial form stated that Red Rock denied the application because "Experian reporting

10   short sale as foreclosure on credit bureau."  Banneck Decl., Ex. D.

         **E.       Fannie Mae's Erroneous Coding of Short Sales in the DU Software**

12          Experian contends that Fannie Mae's underwriting software was responsible for reporting

13   Banneck's short sale as a foreclosure to Red Rock Mortgage, and that its own reporting of the

14   short sale as a short sale was always correct.  To that effect, the undisputed evidence shows that

15   Fannie Mae programmed its DU software to treat a code "9" payment history, which can denote a

16   short sale, a collection, or a charge-off, the same as a code "8" foreclosure.  Clark Decl., Ex. 11 at

17   EXP001566 ("Mortgage accounts . . . will be identified as a foreclosure if there is a current status

18   or manner of payment/MOP code of '8' (foreclosure) or '9' (collection or charge-off).").  The DU

19   software was also programmed to disregard Experian's reported account condition and payment

20   status field that clarifies whether a code "9" is a short sale, as well as its special comment codes.

21   *Id.*

22          Because of these programming decisions, Fannie Mae's DU software caused widespread

23   problems in the credit reporting industry.  *Id.*, Ex. 12.  On May 7, 2013, United States Senator Bill

24   Nelson called for the Consumer Financial Protection Bureau ("CFPB") to investigate the source of

25   these errors and whether the FCRA was violated.  *Id.*  Two days later, a spokesperson for Experian

26   was quoted in a local news story: "The short sales and foreclosures are being coded correctly on

27   Experian's credit reports.  Where we have found the discrepancies occurring is in the underwriting

28   process."  Dkt. No. 51-10 ("Tarter Report") ¶ 15 & Ex. B.  When the CFPB investigated, it found

1   that the credit reporting agencies were not inaccurately reporting short sales as foreclosures.  Clark

2   Decl., Exs. 12 & 13 ("Our investigation discovered that the underlying problem was not due to

3   inaccurate reporting by furnishers or the credit reporting companies[.]").  But the CFPB also found

4   that if credit reporting agencies used a specific code for short sales with a date of sale in the

5   "Manner of Payment code," it would help prevent downstream errors.  *Id.*, Ex. 13.

6         **F.**     **Fannie Mae Caused Banneck's Short Sale to Be Interpreted as a Foreclosure**

7         In this case, it is undisputed that Experian accurately reported Banneck's short sale as a

8   short sale, and not as a foreclosure, in its credit report.  Instead, it was Fannie Mae's DU software

9   that incorrectly interpreted CBC Innovis's merged credit report, which relied on Experian's credit

10  report, to identify Banneck's short sale as a foreclosure during the underwriting process with Red

11  Rock Mortgage.  The findings that the DU software gave Red Rock Mortgage stated that Banneck

12  received a poor recommendation because it identified "a foreclosure that was reported within the

13  last seven years."  *Id.*, Ex. 6 (DU findings).  But the credit report that Experian issued to CBC

14  Innovis correctly identified the short sale as a short sale.  *Id.*, Ex. 7 (CBC Innovis credit report

15  states that the HSBC account was "ACCT LEGALLY PD IN FULL-LESS THAN BAL").  In fact,

16  when Red Rock Mortgage reached out to CBC Innovis to inquire about these conflicting reports,

17  CBC Innovis responded: "Technically, Experian's reporting is correct, since it was never paid in

18  full, but it does not play well with automated underwriting with FannieMae, as they consider all 9

19  rating on mortgages as foreclosures."  *Id.*, Ex. 9.

20         Banneck contends that even if Experian's reporting of short sales was technically accurate,

21  it was still misleading to downstream users like Fannie Mae.  Specifically, Banneck's expert

22  witness argues: "Experian's practice of coding short sales as a '9' was not in line with its

23  requirement to follow reasonable procedures to ensure maximum possible accuracy" because it

24  "could be and was wrongfully interpreted as a foreclosure."  Tarter Report ¶ 13.

25         **G.**     **2014 Complaint from Banneck to Experian and the CFPB**

26         On August 9, 2014, Banneck submitted another dispute letter to Experian regarding its

27  reporting of the short sale on his credit report.  Hughes Decl. ¶ 9 & Ex. 3.  Experian reinvestigated

28  and provided results to Banneck on August 19, 2014.  *Id.*, Ex. 4.  Experian explained that a short

United States District Court
Northern District of California

8

1    sale is supposed to report as "paid in settlement for less than the full balance." *Id.* On August 26,

2    2014, Banneck sent another dispute letter to Experian. *Id.* ¶ 10 & Ex. 5.  Experian reinvestigated

3    and provided the same results to Banneck on September 9, 2014. *Id.*, Ex. 6.  On August 26, 2014,

4    Banneck submitted his complaint to the CFPB.  Clark Decl., Ex. 17.

  **H.**  **Analysis of Plaintiff's Claims**

6      Because there is no genuine dispute that Experian did not report Banneck's short sale as a

7    foreclosure, Experian argues that it is entitled to summary judgment as a matter of law as to all

8    claims that arise from its reporting of the short sale.  Banneck responds even if Experian did not

9    report his short sale as a foreclosure, two of his claims relating to Experian's credit reporting of his

10   short sale are still not properly subject to summary judgment.  First, Banneck argues that Experian

11   reported his short sale as occurring in 2012, when it actually occurred in 2010.  Second, Banneck

12   contends that even if Experian did not publish technically inaccurate information about the short

13   sale, it still published information in a materially misleading manner that is actionable.

14      1.  <u>Banneck's FCRA and CCRAA Claims</u>

15     The Court first considers the nature of Banneck's claims.  Section 1681e(b) of the FCRA

16   requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow

17   reasonable procedures to assure maximum possible accuracy of the information concerning the

18   individual about whom the report relates."  15 U.S.C. § 1681e(b).  Section 1785.14(b) of the

19   CCRAA is a "virtually identical" provision.  Cal. Civ. Code § 1785.14(b); *Schoendorf v. U.D.*

20   *Registry, Inc.*, 97 Cal. App. 4th 227, 238 (2002).  Additionally, § 1681i of the FRCA provides that

21   "if the completeness or accuracy of any item of information contained in a consumer's file at a

22   consumer reporting agency is disputed by the consumer and the consumer notifies the agency

23   directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation

24   to determine whether the disputed information is inaccurate and record the current status of the

25   disputed information, or delete the item from the file[.]"  15 U.S.C. § 1681i(a)(1)(A).  The

26   CCRAA contains a parallel provision in § 1785.16.  Cal. Civ. Code § 1785.16(a).

27     "In order to make out a prima facie violation under § 1681e(b), a consumer must present

28   evidence tending to show that a credit reporting agency prepared a report containing inaccurate

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1   information."  *Guimond v. Trans Union Credit Info., Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).  The

2   same is true with respect to § 1681i.  *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008)

3   (holding that there is no reinvestigation claim unless there is an underlying inaccuracy).  A credit

4   report is "inaccurate" within the meaning of FCRA §§ 1681e(b) and 1681i, as well as CCRAA §§

5   1785.14(b) and 1785.16(a), if it is "patently incorrect or materially misleading."  *Carvalho v.*

6   *Equifax Info. Servs., LLC*, 629 F.3d 876, 890-91 (9th Cir. 2010); *accord Grigoryan v. Experian*

7   *Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1066-67 (C.D. Cal. 2014) ("Courts have applied the

8   'patently incorrect or materially misleading' standard indiscriminately to claims arising under

9   provisions of the FCRA and CCRAA that involve the accuracy of information.").  "Materially

10  misleading" means that information is misleading "in such a way and to such an extent that it can

11  be expected to adversely affect credit decisions."  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d

12  1147, 1163 (citation and internal quotations omitted); *see also Carvalho*, 629 F.3d at 890-91.

13            2.   Banneck's "Foreclosure" Reporting Claims Fail as a Matter of Law

14       As an initial matter, Experian is entitled to summary judgment on Banneck's claims to the

15  extent that they rely on a theory that Experian reported his short sale as a foreclosure.  Banneck

16  has produced no evidence that Experian reported his short sale as anything other than a short sale.

17  Conversely, Experian has shown that it reported Banneck's short sale as a short sale and not a

18  foreclosure by: (1) including on Banneck's credit report the numerical code "68" in the account

19  condition and payment status field, which translates to an account that is both settled and legally

20  paid in full for less than the full balance and, therefore, undisputedly denotes a short sale; and (2)

21  including the numerical code "9" in the leading digit of the payment history field, which translates

22  to a short sale, a collection, or a charge-off, instead of including the numerical code "8," which

23  translates only to foreclosure.  Hughes Decl. ¶¶ 4-5 & Exs. 1 & 2; Hughes Depo. at 49:3-7; Clark

24  Decl., Exs. 2 & 12 (the phrase "Account paid in full for less than the full balance" refers to a short

25  sale); Tarter Depo. at 86:24-87:6 (Banneck's expert agrees that the phrase "settle the account for

26  less than the full amount" refers to a short sale) & 80:9-81:19 (Banneck's expert agrees that

27  Experian's numerical code "9" can refer to short sales and does not refer to foreclosures).

28       The more difficult question is whether Experian is entitled to judgment as a matter of law

1    on the claim that it reported Banneck's short sale in a technically correct but materially misleading

2    manner.  In other words, the Court must decide whether a jury, given these undisputed facts, could

3    reasonably conclude that Experian's use of the numerical code "9" in its payment history field,

4    which "maps" to multiple credit events, including a short sale, is materially misleading, despite the

5    fact that it also used the numerical code "68" in its account condition field to denote a short sale.

6         The Court finds that Experian's simultaneous reporting of the numerical code "68," which

7    no one disputes refers only to a short sale, in connection with the HSBC account on Banneck's

8    credit report is dispositive in favor of Experian.  Banneck's claim is necessarily predicated on the

9    argument that Experian omitted some additional, material information that would have made clear

10   the relevant credit event on the HSBC account was a short sale.  *See Gorman*, 584 F.3d at 1163

11   (explaining that FCRA claims pled on a theory of latent inaccuracy are predicated on an omission

12   that makes credit reporting incomplete and thereby "materially misleading"); *accord Saunders v.*

13   *Branch Banking and Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008).  But Experian included

14   the only additional information that would complete that picture for end users of Banneck's credit

15   report: the numerical code "68" that undisputedly means short sale.  The fact that the numerical

16   code "9," standing alone, could denote more than one derogatory credit event in Banneck's

17   payment history on his HSBC account does not conceal or alter this clear reporting.  It is true that

18   Experian theoretically could have created an additional numerical code in its payment history field

19   to distinguish short sales from the other derogatory credit events that also fall under the ambit of

20   numerical code "9," but the Court does not find any material difference in having two codes that

21   make clear the same information that a single code could also make clear.

22        A materially identical case from outside of this circuit, *Toliver v. Experian Information*

23   *Solutions, Inc.*, is instructive on this point.  *See* 973 F. Supp. 2d 707 (S.D. Tex. 2013).  In *Toliver*,

24   the plaintiff defaulted on a debt, which the creditor charged off and then sold to a debt buyer.  *Id.*

25   at 710-11.  The debt buyer reported the debt to Experian using the code "O."  *Id.*  The code "O"

26   undisputedly denoted that the account was "open."  *Id.* at 718.  The plaintiff argued Experian had

27   violated § 1681e(b) and § 1681i of the FCRA by publishing these codes in its credit report on her

28   defaulted debt because "O" could also refer to "a fresh and new delinquency," which she argued

11

causes a worse credit outcome as compared to an old debt in collection. *Id.* The "O" code was an

accurate characterization of the plaintiff's credit event, but it could denote multiple credit events,

some with apparently worse credit ramifications than others. *Id.* Because an open account could

refer to multiple credit events, Experian used an additional account status code to denote that the

account was open because of an ongoing debt collection. *Id.* at 719. The court granted summary

judgment, holding that Experian's reporting was not misleading because it clarified that the "O"

code was used to denote a debt in collection, not just that the account was generally open:

> [I]n addition to reporting the account using the "O" code, debt buyers attempting to collect on an account are instructed [] to also use the [] code "93" to report the account's "status." This designation indicates that the "account [was] assigned to internal or external collections." The [] account at issue included the "93" status code in addition to the "O" code, consistent with the [] guidelines. Thus, in addition to reporting the [] account as "due upon demand," [the debt buyer] also reported that it was assigned to collections. Given that these codes are well-defined and the definitions known and accessible to those in the credit reporting industry, it would be unreasonable to conclude that the codes are misleading.

*Id.* These facts and outcome are materially identical to the instant case. The use of a code that has

multiple meanings is not misleading where the credit reporting agency clarifies which credit event

is actually being reported with an undisputedly clear additional code. Plaintiff cites to no contrary

authority, and the Court finds none.

   That Fannie Mae programmed its underwriting software in a manner that misinterpreted

Experian's credit reporting codes does not change the analysis. It is undisputed that Fannie Mae

had Experian's technical manual that allowed it to interpret Experian's coding for short sales

properly, but nonetheless interpreted accounts with a code "9" exclusively as foreclosures. *See*

Clark Decl., Ex. 11 at EXP001566 (Fannie Mae's manual states that its DU software interprets all

code "9" payment histories, including short sales, as code "8" foreclosures); *id.* (DU disregards

account condition codes like "68" for short sales). As the Ninth Circuit made clear in *Gorman*, the

"materially misleading" standard is objective: credit reporting must be "misleading in such a way

and to such an extent that it *can be expected to* adversely affect credit decisions." *See* 584 F.3d at

1163. Here, if Fannie Mae was misled as opposed to acting in conscious disregard of Experian's

United States District Court
Northern District of California

1    clear instructions in order to simplify the coding of its underwriting software, there is no evidence

2    that its interpretation should have been "expected" by Experian.  Experian's knowledge of Fannie

3    Mae's erroneous software coding at least one month in advance of issuing Banneck's subject

4    credit report does not change that conclusion.  *See* Tarter Decl. ¶ 15 & Ex. B.  Whether Experian's

5    credit report was materially misleading is an objective issue.  In other words, Experian's reporting,

6    which the Court finds was not misleading as a matter of law, did not become misleading by virtue

7    of the fact that Experian may have known an end user was incorrectly interpreting it.

8            Accordingly, Experian is entitled to summary judgment on Banneck's claims that Experian

9    reported his short sale in a manner that could reasonably mislead end users to characterize it as a

10   foreclosure.

11           3.       Summary Judgment Is Not Appropriate on Banneck's "Date" Claims

12           Banneck contends that it is undisputed that Experian failed to accurately report the date of

13   the short sale.  To that effect, the 2013 credit report that Experian issued to CBC Innovis states

14   that the "Date of status" is "Aug 2012."  Banneck Decl. ¶ 9 & Ex. C at EXP0000567.  In reality,

15   the short sale with HSBC occurred in February 2010.  *Id.* ¶ 10; Clark Decl., Ex. 1 (HSBC short

16   sale letter).  Based on that evidence, Banneck contends that his claims for inaccurate reporting and

17   unreasonable reinvestigation under the FCRA and CCRAA are not subject to summary judgment.

18           Experian does not dispute that the "Date of status" for the short sale on its credit report to

19   CBC Innovis is an inaccurate representation of when the short sale occurred.  Instead, Experian

20   first argues that Banneck cannot show that he has incurred any actual damages that were caused by

21   Experian's incorrect reporting of the date of status.  Specifically, Experian contends that there is

22   no causal connection between the date error and either Fannie Mae's poor recommendation or Red

23   Rock Mortgage's denial of credit based on that recommendation because Fannie Mae's evaluation

24   was exclusively a function of its foreclosure coding error.  Reply at 3-4.  In support of that theory

25   of causation, Experian points to Red Rock Mortgage's denial of credit letter, which says "Experian

26   reporting short sale as foreclosure on credit bureau."  Banneck Decl., Ex. D.

27           It is true that an FCRA plaintiff must incur actual damages to state a claim.  *Dennis*, 520

28   F.3d at 1069; *see also* 15 U.S.C. § 1681o(a)(1) (actual damages awarded where credit reporting

United States District Court
Northern District of California

United States District Court
Northern District of California

1  agency is negligent).  But the Ninth Circuit has made clear that "liability under § 1681e(b) [is not]

2  predicated, as a matter of law, on the occurrence of some event—denial of credit or transmission

3  of the report to third parties—resulting from the compilation and retention of erroneous

4  information." *Guimond*, 45 F.3d at 1333.  That is because actual damages under the FCRA

5  include recovery for emotional damages and humiliation.  *Id.  Guimond* thus stands for the

6  proposition that an FCRA plaintiff may prove a claim for actual damages by showing that a credit

7  reporting agency's maintenance of inaccurate credit records or unreasonable investigation of a

8  credit dispute has resulted in emotional harm or humiliation, even where credit was not denied.

9        Accordingly, even if it were undisputed that Fannie Mae's underwriting software issued its

10  negative lending recommendation to Red Rock Mortgage exclusively because it treated Banneck's

11  short sale as a foreclosure, and that Red Rock Mortgage denied a loan to Banneck on that basis,

12  that would not entitle Experian to summary judgment on the issue of causation.  Banneck disputed

13  the inaccurate information on the date of his short sale on multiple occasions. *See* Banneck Decl.

14  ¶¶ 4-5; Hughes Depo. at 90:2-5; Hughes Decl. ¶¶ 9 & Exs. 3-5; Clark Decl., Ex. 17.  The Court

15  cannot at this stage conclude that Banneck's emotional distress did not flow from the dispute

16  resolution process as a matter of law.[2]  And in any case, Banneck does contend that Experian's

17  inaccurate reporting of the date of the short sale negatively impacted his attempt to obtain credit.

18  Banneck's expert testified that the inaccurate date reporting would have "impacted Mr. Banneck's

19  attempt to obtain a home loan in June 2013" because "it effectively re-aged the account." Tarter

20  Decl. ¶ 10.  That re-aging "cause[d] further damage to Mr. Banneck" because "the more recent an

21  event in a credit report the more weight it is given. *Id.*  Accordingly, there is a genuine dispute on

22  the issue of causation and summary judgment is inappropriate on that basis.[3]

23        Experian also contends that HSBC was responsible for reporting the date error, and that

24  Experian maintained reasonable procedures that suffice to preclude liability.  Reply at 2-3; Hughes

---

[2] Experian does not now contest that Banneck actually suffered emotional distress.

[3] Actual damages are also not required where FCRA violations are willful.  *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412-13 (9th Cir. 2014) (the FCRA "does not require a showing of actual harm when a plaintiff sues for willful violations"), *vacated and remanded on other grounds sub nom. Spokeo, Inc. v. Robins*, — U.S. —, 136 S. Ct. 1540 (2016).  But, as discussed below, there is no evidence of willfulness here.

Decl. ¶ 11-12.  A defense of reasonableness is usually insufficient to warrant summary judgment on an FCRA or CCRAA claim.  It is true that "[t]he FCRA does not impose strict liability [and that] an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures."  *Guimond*, 45 F.3d at 1333.  But "[t]he reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." *Id.*; *accord Andrews v. TRW Inc.*, 225 F.3d 1063, 1068 (9th Cir. 2000) ("[It] would normally not be easy for a court as a matter of law to determine whether a given procedure was reasonable in reaching the very high standard set by [the FCRA].").  Given this guidance from the Ninth Circuit, Experian's reasonableness defense is a jury question.

### 4.    Banneck's Willfulness Claim Fails as a Matter of Law

Finally, Experian moves for summary judgment on the issue of willfulness.  A finding of willfulness permits an FCRA or CCRAA plaintiff to recover punitive damages.  15 U.S.C. § 1681n; Cal. Civ. Code § 1785.31(a)(2).  A "willful" violation under the FCRA includes "not only knowing violations of a standard, but reckless ones as well."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).  A defendant acts in reckless disregard if the defendant's action "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  *Id.* at 69.  That is, the defendant must have taken action involving "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 68 (internal quotation omitted).  Experian contends there is no evidence that it acted willfully.  Banneck only proffers that there is evidence of willfulness with respect to his foreclosure reporting claim, but the Court has granted summary judgment on that theory.

Because Banneck has failed to set forth any evidence of willfulness regarding any remaining claim, summary judgment is appropriate.

## V.    CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Experian's partial motion for summary judgment.  Summary judgment is proper as to all claims alleging that Experian inaccurately reported Banneck's short sale as a foreclosure, as well as to the

United States District Court
Northern District of California

issue of willfulness on all claims at issue in the motion.  Summary judgment is not proper, however, as to all claims alleging that Experian inaccurately reported the date of the short sale. Additionally, the Court exercises its discretion and **DENIES** Experian's motion for leave to lodge supplemental authority as unnecessary.

**IT IS SO ORDERED.**

Dated: June 20, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge